O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ARCH SPECIALTY INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 2-19-cv-06964-DDP-ASx <br><br>**ORDER RE: ARCH SPECIALTY INSURANCE COMPANY'S MOTION FOR PARTIAL REVIEW OF MAY 12, 2022 ORDER** <br><br>[Dkt. 143] |
| Plaintiff, | | |
| v. | | |
| UNIVERSITY OF SOUTHERN CALIFORNIA, | | |
| Defendant. | | |

Presently before the court is Plaintiff Arch Specialty Insurance Company's ("Arch") Motion for Partial Review of the Magistrate Judge's May 12, 2022 Order denying portions of Arch's Motion to Compel the production of a settlement agreement between Defendant University of Southern California ("USC") and its insurance broker, non-party Chivaroli & Associates ("Chivaroli"). (Dkt. 143.) Having considered the submissions of the parties, and heard oral argument, the court adopts the following Order.

**I. BACKGROUND**

This insurance coverage action concerns two policies for excess healthcare professional liability coverage Arch issued to USC for the policy periods of July 1, 2016 to July 1, 2017 and July 1, 2017 to July 1, 2018. (Dkt. 1, Complaint ¶ 9.) Each policy provides USC with $10 million of coverage, in excess of $100 million in underlying coverage per claim, provided by several different insurance carriers. (Id. ¶ 10.) The policies include an Abuse or Molestation Exclusion, which bars coverage to any "claim" or "loss" that alleges "[i]njury or damages that in any way, in whole or in part, arises out of, relates to or results from 'abuse or molestation.'" (Id. ¶ 1, 9, Ex. A & B.)

Arch alleges that in May 2018, USC learned that the *Los Angeles Times* planned to run a story accusing USC of allowing one of its physicians, Dr. George Tyndall, to continue practicing as a gynecologist in the Student Health Center, despite multiple accusations of repeated misconduct toward young patients "over many years." (Id. ¶ 1.) Arch alleges that once USC's insurance broker, Chivaroli, "recogniz[ed] that lawsuits were sure to be filed in the wake of this story," Chivaroli "suddenly contacted Arch and demanded on behalf of USC"—without disclosing the allegations against Dr. Tyndall— "that Arch amend its policy to delete the Abuse or Molestation Exclusion" on the basis that the Exclusion had been included by mutual mistake. (Id.)

Arch filed a complaint against USC, seeking declaratory relief and alternatively, rescission of the excess policy. (Id. ¶¶ 1-2.) Thereafter, USC filed counterclaims against Arch for reformation, breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of California Insurance Code Section 781. (Dkt. 47, Amended Answer and Counterclaims.) USC alleges that "at the time of placement of the Arch Policies, neither USC nor Arch intended that the Arch Policies would contain an Abuse or Molestation Exclusion." (Id. ¶ 31.) USC further alleges that USC and Arch "intended that the Arch Policies would impose upon Arch a nondiscretionary duty to defend covered claims." (Id. ¶ 32.)

The parties stipulated to bifurcate the litigation into two phases. (See Dkt. 79.) Phase I is limited to Arch's declaratory judgment claim and USC's reformation counterclaim, and Phase II will address Arch's claim for rescission, USC's breach of contract counterclaims, and damages. (See Dkt. 64.)

Arch's Motion to Compel, in part, sought from USC and Chivaroli supplemental responses to discovery requests pertaining to a settlement agreement reached at a mediation between Chivaroli and USC, as well as the production of the settlement agreement itself. (See Dkt. 108, 121.) After considering USC's and Chivaroli's evidentiary objections to disclosure of the settlement agreement or its terms, the Magistrate Judge concluded, as relevant here, that (1) Arch's written discovery did not request the settlement agreement from USC, (2) the settlement agreement was irrelevant to Phase I of the litigation, specifically the issue of whether the policies should be reformed due to a mutual mistake by Arch and USC, and was unnecessary to test the credibility of USC or Chivaroli witnesses, and (3) Arch had not demonstrated "how the amount or the terms of the settlement [were] needed to question a witness about motive or bias." (Dkt. 136, Order at 5-6.) Although the Magistrate Judge concluded that Arch did not request the settlement agreement from USC, she acknowledged that Arch did seek production of the settlement agreement from Chivaroli pursuant to a subpoena.[1]

---

[1] In Request for Production ("RFP") No. 12 of the subpoena to Chivaroli, Arch sought:

> All Documents relating any allegation by UCS that [Chivaroli] breached any obligation to USC with respect to the Arch Policies, including without limitation (a) correspondence between [Chivaroli] and USC; (b) documents relating to any settlement between [Chivaroli] and USC describing the terms of the settlement.

(Dkt. 122, Joint Stipulation at 28.) Likewise, RFP No. 14 of the subpoena sought:

3

(Id. at 6.) Nevertheless, the Magistrate Judge denied Arch's Motion to Compel the settlement agreement from Chivaroli. Having denied the Motion to Compel on the grounds described above, the Magistrate Judge did not address USC's and Chivaroli's objection that the settlement agreement and related communications were protected under California's mediation privilege. (Id. n.2.) Arch now seeks review of those rulings.

**II. LEGAL STANDARD**

This Court reviews non-dispositive discovery orders under a clearly erroneous or contrary to law standard. Rivera v. NIBCO, Inc., 364 F.3d 1057, 1063 (9th Cir. 2004); Fed. R. Civ. P. 72. "The 'clearly erroneous' standard applies to factual determinations and discretionary decisions.'" McAdam v. State Nat. Ins. Co., 15 Supp. 3d 1009, 1013 (S.D. Cal. 2014). "[L]egal conclusions are reviewed de novo to determine whether they are contrary to law." Perry v. Schwarzenegger, 268 F.R.D. 344, 348 (N.D. Cal. 2010).

"When the court reviews the magistrate's determination of relevance in a discovery order … the standard of review in most instances is … abuse of discretion. The court should not disturb the magistrate's relevance determination except where it is based on an erroneous conclusion of law or where the record contains no evidence on which [the magistrate] rationally could have based that decision." Id. (citations omitted).

///

---

All contracts or agreements to which [Chivaroli] and USC are parties that relate to [Chivaroli's] duties as a broker for USC in 2016-2018, this Action, and/or the Arch Policies. This category includes, without limitation, any settlement agreement between [Chivaroli] and [USC] are parties that relates to the Arch policies; and any confidentiality actions against USC and Dr. Tyndall.

(Id.)

4

## III. DISCUSSION

The Magistrate Judge did not err in concluding that Arch failed to request the settlement agreement from USC. However, as the Magistrate Judge acknowledged, and the parties do not dispute, the settlement agreement fell within the scope of documents Arch requested from Chivaroli in the subpoena. (See Dkt. 122.) Because Chivaroli, like USC, objected to Arch's Motion to Compel on relevance and privilege grounds, the court addresses those objections in turn within the context of the Magistrate's Order.

With respect to relevance, the Magistrate Judge found that "the fact that the parties have reached a settlement is adequate" to test the credibility of USC or Chivaroli witnesses. However, the relevance standard, under Federal Rule of Civil Procedure 26(b)(1), does not turn on whether the discovery at issue is "adequate." A relevant matter is "any matter that bears on, or that reasonably could lead to other matter that bear on" any party's claim or defense. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citation omitted). A litigant may also obtain discovery so long as it is "reasonably calculated to lead to the discovery of admissible evidence." Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005).

The settlement agreement may be relevant to the credibility of Chivaroli witnesses, and thus to USC's reformation claim. See In re Cathode Ray Tube (CRT) Antitrust Litig., No. 3:07-cv-05944-SC, 2015 WL 13756260, at *2-3 (N.D. Cal. July 31, 2015) (finding settlement agreements relevant, in part, to test witness credibility and bias). To reform the insurance policies, USC must establish by "clear and convincing evidence that the agreement as written does not express the true intention of the parties and that there was a mutual mistake." Northrop Grumman Corp. v. Factory Mut. Ins. Co., No. CV 05-0844 DDP (PLAx), 2011 WL 4501945, at *8 (C.D. Cal. Sept. 28, 2011) (inner quotations omitted) (quoting Dictor v. David & Simon, Inc., 106 Cal. App. 4th 238, 253 (2003)). Here, Arch contends that USC relies on the testimony of Chivaroli's Chief Executive Officer, Collin Wedel, to show that (1) the Abuse or Molestation Exclusion and (2) discretionary

"right to defend" provision were included in the Arch policies by mistake—evidence potentially essential to USC's reformation claim. Specifically, Mr. Wedel testified that Chivaroli and Arch engaged in various discussions beginning in 2013, and had a "common understanding" as to which provisions would be included in the policies. (Dkt. 122-9, Wedel Tr. 93:18-94:20, 102:17-105:3.) He further testified that in 2018, Arch acknowledged that "a mistake [ ] was made in Arch's issuance of the policy" and that Arch agreed that the mistake needed to be corrected. (Id.)

Given that USC and Chivaroli mediated a dispute regarding the Arch policies and then settled USC's claims against Chivaroli, the terms of the settlement agreement may call Mr. Wedel's credibility into question, insofar as Chivaroli may stand to benefit from any success USC may achieve in its counterclaims against Arch. Arch has, therefore, demonstrated that the terms of the settlement agreement are relevant under Rule 26(b).

USC also contends that even if the settlement agreement is relevant, it is privileged.[2] See Cal. Evid. Code § 1119(b). Section 1119(b) provides:

> No writing, as defined in Section 250, that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.

Cal. Evid. Code § 1119(b). USC contends that Section 1119(b) protects disclosure of the settlement agreement because the "material terms . . . were made the subject of a mediation" and "contains detailed language reflecting communications and negotiations which took place during the mediation." (Dkt. 151, Opp. at 10; Dkt. 151-1, Zill Decl. ¶ 6.) Under USC's interpretation, however, no settlement agreement reached during

---

[2] Chivaroli joins in the arguments set forth in USC's Response to Arch's Motion. (See Dkt. 148.)

6

1  mediation would ever be discoverable, regardless of relevance or lack of privilege. As
2  such, the court cannot say that Section 1119(b) applies to the settlement agreement
3  simply because, as USC contends, its contents are the product of a mediation.
4       Moreover, as Arch observes, a statutory exception to Section 1119(b) provides for
5  the disclosure of a written settlement agreement reached during mediation. See Cal.
6  Evid. Code § 1123. Section 1123 provides that "[a] written settlement agreement
7  prepared in the course of, or pursuant to, a mediation, is not made inadmissible, or
8  protected from disclosure," if the agreement is "signed by the settling parties" and "[t]he
9  agreement provides that it is enforceable or binding or words to that effect." See Cal.
10 Evid. Code § 1123 (a) & (b); see Westport Ins. Corp. v. California Cas. Management Co.,
11 916 F.3d 769, 782 n.8 (9th Cir. 2019). USC does not dispute that the settlement agreement
12 is enforceable or binding. Instead, USC appears to argue that even under the statutory
13 exception, binding settlement agreements reached during mediation are not subject to
14 third-party disclosure if the parties to the agreement have expressly limited the
15 agreement's disclosure, such as by making the agreement confidential. (Opp. at 12-13.)
16 However, as Arch contends, the language of Section 1123 is clear, and the court is not
17 inclined to adopt a narrower interpretation. Other courts have permitted discovery of
18 confidential settlement agreements by third parties pursuant to Section 1123. See, e.g., In
19 re Cathode Ray Tube, 2015 WL 13756260, at *3 (finding settlement agreement
20 discoverable under California Evidence Code § 1123). Accordingly, the court concludes
21 that Section 1123 permits disclosure of the settlement agreement between USC and
22 Chivaroli. The California mediation privilege does not otherwise apply.
23 ///
24 ///
25 ///
26 ///
27 ///
28

## IV. CONCLUSION

For the reasons stated above, Arch's Motion for Partial Review of the Magistrate Judge's May 12, 2022 Order is GRANTED with respect to Chivaroli.[3]  Chivaroli must produce the settlement agreement to Arch and Arch's attorneys of record within seventy-two (72) hours from the date of this Order.

**IT IS SO ORDERED.**

Dated: June 29, 2022

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE

---

[3] Chivaroli's contention that Arch cannot seek the settlement agreement from Chivaroli because Arch can obtain the agreement directly from USC, is unavailing.  Under the circumstances, Arch's request for the settlement agreement from Chivaroli is neither unduly burdensome nor unreasonably duplicative. See Fed. R. Civ. P. 45(d)(1), 26(b)(2)(C).  Consistent with this Order, Chivaroli must comply with its discovery obligations pursuant to the subpoena.

8